UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL R. THOMAS, | ) | |
|     f/k/a Sean P. Higgins | ) | |
|     f/k/a Shawn P. Higgins, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 2:11-cr-00047-DBH |
| | ) | 2:15-cv-00007-DBH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Michael R. Thomas, formerly known as Sean P. Higgins and/or

Shawn P. Higgins, moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.

(Motion, ECF No. 134.)  The Government has moved for summary dismissal.  (Response, ECF

No. 145.)

Petitioner asserts Fourth, Ninth, and Tenth Amendment claims against law enforcement

and a DNA testing company (Ground One); judicial conflict of interest (Ground Two); conflict of

interest of a postal inspector (Ground Three); and Fourth, Ninth, and Tenth Amendment claims

against Petitioner's former school (Ground Four).  Each of these claims includes a related claim

of ineffective assistance of counsel.  In addition, Petitioner claims ineffective assistance of counsel

regarding the plea agreement and the length of the sentence (Ground Five); failure to advise

Petitioner that he had a right to plead nolo contendere (Ground Six); and failure to appeal the denial

of a motion to dismiss (Unnumbered Ground).

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend that the Court grant the Government's request, and dismiss Petitioner's motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in March 2011 and indicted in April 2011.  (Complaint, ECF No. 1; Indictment, ECF No. 17.)  The initial seven-count indictment alleged that Petitioner threatened to murder a United States senator and representative, 18 U.S.C. § 115(a)(1)(B) (Counts 1, 3); Petitioner mailed threatening communications to them, to the Maine governor, and to a governor of another state, 18 U.S.C. § 876(c) (Counts 2, 4, 5, 6); and Petitioner possessed a firearm as a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2), after he previously had been convicted of a stalking felony in state court in Massachusetts (Count 7).

In May 2011, Petitioner filed a motion to suppress DNA evidence that was obtained in 2005 in another investigation and eventually used to obtain a search warrant in this matter. (Motion to Suppress, ECF No. 27.)  The Court denied the motion.  *United States v. Thomas*, 815 F. Supp.2d 384 (D. Me. 2011).  (Decision and Order, ECF No. 51.)  The First Circuit described the facts in its opinion on Petitioner's direct appeal:

> The DNA was obtained during a 2005 postal service investigation of a different matter which resulted in no charges against [Petitioner].  That profile was not destroyed but retained in closed investigative files.  It was retrieved during the 2011 investigation, which focused on [Petitioner] for other reasons.  The 2005 DNA profile was a match to the DNA recovered from the threatening letters sent in 2011 and provided the basis for the 2011 warrant.

*United States v. Thomas*, 736 F.3d 54, 56 (1st Cir. 2013).

The 2004-2005 investigation that was the subject of the motion to suppress began after a preparatory school in Massachusetts received a threatening letter containing an unidentified white

powder.[1]  *Id.* at 56.  The letter had a northern Maine postmark, and the school secretary, who was married to a postal inspector, determined that Petitioner, an alumna of the school, lived in the area covered by the postmark.   *Id.*   Later, a Maine postal inspector obtained a federal grand jury subpoena from the United States Attorney's Office in Portland, although there was no grand jury proceeding; the subpoena ordered Petitioner either to appear before the grand jury in Bangor, or to provide a DNA sample, fingerprints, and a handwriting exemplar to the postal inspectors at the local police station.  *Id.* at 56-57.  Petitioner chose to go to a local police station in northern Maine, where he provided the samples, including a cheek (buccal) swab.  *Id.* at 57.

During the 2011 investigation, investigators obtained a DNA sample from at least one of the threatening letters at issue in the criminal case that is the subject of this section 2255 motion.  *Id.* at 58.  One of the postal inspectors involved in the 2004-2005 investigation was also involved in the 2011 investigation, and he retrieved the then-archived case file from the 2004-2005 investigation.   *Id.*   Investigators found that Petitioner's DNA profile from the 2004-2005 investigation matched his DNA profile from the 2011 investigation.  *Id.*  The affidavit in support of the 2011 complaint and search warrant was based in part on the match between the 2005 and 2011 DNA profiles.  *Id.*

In September 2011, following an evidentiary hearing and oral argument, the Court denied the motion to suppress, concluding that regardless of whether the 2004-2005 investigation violated the Fourth Amendment, "it would be an undue extension of the exclusionary rule to use it to exclude the defendant's DNA profile and his resulting incriminating statements in a prosecution six years later for unrelated criminal conduct."  *Thomas*, 815 F. Supp. 2d at 385, 389.

---

[1] The threatening letter that was the subject of the 2004-2005 investigation was sent in 2004; most of the investigation of that incident took place in 2005.  *United States v. Thomas*, 736 F.3d 54, 56 (1st Cir. 2013).

In October 2011, the Government filed a superseding nine-count indictment that alleged the previous seven counts and added the following two counts: that Petitioner engaged in interstate stalking, 18 U.S.C. §§ 2261A(2), 2261(b)(5) (Count 8); and that Petitioner engaged in a terrorist hoax, 18 U.S.C. § 1038(a)(1) (Count 9). (Superseding Indictment, ECF No. 52.) Petitioner subsequently filed a second motion to suppress, in which he incorporated the arguments of his first motion to suppress. (Motion to Suppress, ECF No. 66.) In January 2012, the Court denied Petitioner's second motion to suppress on the same bases that it denied the first motion to suppress. (Order on Pending Motions, ECF No. 75.)

In March 2012, Petitioner filed two motions to dismiss, one of which addressed Counts 1-6 of the superseding indictment, and the other addressed Count 8 of the superseding indictment. (Motions to Dismiss, ECF Nos. 85, 86.) Petitioner argued that Counts 1-6 should be dismissed because they did not allege "true threats," as required under *Watts v. United States*, 394 U.S. 705, 708 (1969). (Motion, ECF No. 86 at 1.) Petitioner argued that Count 8 should be dismissed because the interstate stalking statute, 18 U.S.C. § 2261A(2), violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment. (Motion, ECF No. 85 at 1.)

In May 2012, the Court held oral argument on both motions to dismiss. (Hearing Tr., ECF No. 129 at 1-2.) The Court denied, in an oral order from the bench, the motion to dismiss Counts 1-6. (*Id.* at 54-57.) In a written decision, the Court denied the motion to dismiss Count 8. (Decision and Order, ECF No. 94.) *United States v. Sayer*, 2012 WL 1714746, 2012 U.S. Dist. Lexis 67684 (D. Me. May 15, 2012).[2] The Court concluded that the statute was not

---

[2] This Court issued a single written decision on the motion to dismiss Count 8, filed in this case, and on a motion to dismiss that raised the same constitutional challenge to the interstate stalking statute, 18 U.S.C. § 2261A(2), in an otherwise unrelated case. *United States v. Sayer*, 2012 WL 1714746, 2012 U.S. Dist. Lexis 67684 (D. Me. May 15,

unconstitutional as applied to Petitioner, nor was it unconstitutionally broad or vague. 2012 WL 1714746, at *4, 7-9, 2012 U.S. Dist. Lexis 67684, at *13, 28-41.

In June 2012, Petitioner entered a conditional guilty plea to several counts, including both counts of threatening members of Congress, one count of mailing threatening communications, possession of a firearm as a convicted felon, and engaging in interstate stalking (Counts 1, 3, 5, 7, 8). (Conditional Plea. ECF No. 102; Minute Entry, ECF No. 103.) The conditional plea preserved Petitioner's right to appeal from the denial of his motion to suppress and his right to appeal from the denial of his two motions to dismiss. (Conditional Plea at 1.) As part of the plea agreement, the Government agreed to dismiss the remaining counts at sentencing. (Plea Agreement, ECF No. 99 at 1.) At Petitioner's change of plea hearing, the Court accepted the conditional plea. (Plea Tr., ECF No. 140 at 18.)

At sentencing, the Court accepted the plea agreement and found the facts as set forth in the revised presentence investigation report. (Sentencing Tr., ECF No. 130 at 22.) The revised presentence investigation report cited the same base offense levels as to which the parties had agreed on all counts, and the Court found the base offense levels as provided in the report. (Sentencing Tr., ECF No. 130 at 22-23.) To the base offense level of 18 for Count 8, the Court added four levels, pursuant to U.S.S.G. § 2A6.2(b)(1), because Petitioner engaged in a long-term pattern of threatening or harassing behavior, and the Court added an additional four levels for multiple counts, pursuant to U.S.S.G. 3D1.4, for a combined adjusted offense level of 26. (*Id.* at 23.) The Court subtracted three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, for a total offense level of 23. (*Id.* at 23.) The total offense level, when combined with a criminal history category of III, yielded a guideline range of 57-71 months. (*Id.* at 23-24.)

---

2012). Although Petitioner did not appeal from the decision, the defendant in the other case did file an appeal, and the First Circuit affirmed. *United States v. Sayer*, 748 F.3d 425, 435-36 (1st Cir. 2014).

The Court sentenced Petitioner to 71 months of imprisonment on Counts 1, 3, 7, and 8, and sentenced Petitioner to 60 months of imprisonment on Count 5, to be served concurrently, followed by three years of supervised release on all counts, to be served concurrently. (Minute Entry, ECF No. 119; Judgment, ECF No. 120 at 2-3.) On the Government's motion, the Court dismissed the remaining counts (Counts 2, 4, 6, 9). (Judgment at 1.)

In Petitioner's direct appeal, he challenged only the denial of his motion to suppress. (Appellant's Brief, No. 12-2438 (1st Cir. Apr. 17, 2013).) In November 2013, the First Circuit affirmed the Court's denial of the motion to suppress. (Opinion and Judgment of USCA, ECF Nos. 131, 132.) *Thomas*, 736 F.3d at 66. The First Circuit concluded that the method used in 2005 to obtain a DNA sample violated the Fourth Amendment:

> What is clear here is that there was no determination by a grand jury or a judge of whether any particular level of Fourth Amendment justification had been met to justify the grand jury subpoena for the DNA sample. On that basis alone, we conclude his Fourth Amendment rights were then violated.

736 F.3d at 61 (alterations omitted). However, the First Circuit held that despite the Fourth Amendment violation, the exclusionary rule did not apply. *Id.* at 61-62 (citing *Herring v. United States*, 555 U.S. 135 (2009)). "Exclusion is not an automatic consequence of a Fourth Amendment violation, but rather is available only where the benefits of deterring the police misconduct that produced the violation outweigh the costs of excluding relevant evidence." *Id.* at 60 (citing *Herring*, 555 U.S. at 141). The First Circuit determined that the Fourth Amendment violation that occurred when the evidence was obtained in 2005 was too "'attenuated' from the events that occurr[ed] following the error" to justify application of the exclusionary rule. *Id.* at 60, 62 (quoting and citing *Herring*, 555 U.S. at 144). The First Circuit further held that law enforcement's subsequent retention of the 2005 file, its retrieval in 2011 of a missing page from the 2005 laboratory report, and its use of the 2004-2005 investigatory file during the 2011 investigation, did

not constitute an additional Fourth Amendment search.  *Id.* at 64.  Finally, the First Circuit

concluded:

> Having found the Fourth Amendment violated in the taking of the 2004 sample,
> even assuming the retention of the DNA profile in a closed case file raises some
> privacy concerns, and that there is some marginal value even in attenuated
> deterrence, we agree with the district court that exclusion is not "worth the price
> paid by the justice system."

*Id.* at 66 (quoting *Herring*, 555 U.S. at 144).[3]

On March 31, 2014, the United States Supreme Court denied Petitioner's petition for a writ

of certiorari.  134 S. Ct. 1771 (2014).  Petitioner's undated section 2255 motion was timely filed

on January 7, 2015.  (Motion at 1, 13.)

## II.    DISCUSSION

### A.  Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that

the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that

the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of

the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral

attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence

that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir.

1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal

habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty

---

[3] The First Circuit also considered and rejected Petitioner's arguments that (1) retention of the 2005 DNA report violated the DNA Analysis Backlog Elimination Act of 2000 ("DNA Act"), Pub. L. No. 106-546, 114 Stat. 2726 (2000) ("codified as amended in scattered sections of 10 U.S.C., 18 U.S.C., 28 U.S.C. and 42 U.S.C."), *Thomas*, 736 F.3d at 63; and (2) transfer of the DNA profile across agencies violated Fed. R. Crim. P. 6(e), which governs grand jury secrecy, *Thomas*, 736 F.3d at 65-66.

to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A habeas petition is not a substitute for an appeal. *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Id.* at 127-28. An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates that counsel's representation fell below an objective standard of reasonableness and prejudiced the petitioner's defense. *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

To succeed on an ineffective assistance of counsel claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697.

As for the "cause" test, the court must be "'fairly tolerant'" of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno-Espada v. United States*,

666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)).  The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'"  *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 466 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect.  *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002).  Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of Government witnesses. *Turner*, 699 F.3d at 584.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'"  *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).  In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641

9

(1st Cir. 2002)).  Summary dismissal of a motion is permitted when the allegations are "'vague,

conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie

[the] claim.'"  *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495

(1962)).  The Court can reasonably require a petitioner to supply the court with salient details of

the claim prior to permitting discovery or a hearing.  *Id.* (holding that "the district court did not

abuse its discretion in refusing to license a fishing expedition").

### B.  Claims and Analysis

####   1.  Fourth, Ninth, and Tenth Amendment claims against law enforcement and DNA testing company and related ineffective assistance claim (Ground One)

Petitioner's primary constitutional claim in Ground One is based on an alleged Fourth

Amendment violation and ineffective assistance of counsel for counsel's failure to raise effectively

the Fourth Amendment claim.  (Motion at 5; Reply, ECF No. 150 at 1-2.)  Petitioner contends that

law enforcement violated his Fourth Amendment rights by obtaining his DNA deceitfully and

without due process in 2005.  (Motion at 5; Reply at 1.)  Petitioner also maintains that his Fourth

Amendment rights were violated when his DNA profile was retained in a "private database"

without his knowledge or consent, and that if his DNA information had been placed in a centralized

database, it would have been destroyed following the 2005 investigation.[4]  (Motion at 5.)

---

[4] *See United States v. Thomas*, 736 F.3d 54, 57 (1st Cir. 2013) (noting that postal inspectors sent Petitioner's buccal swab to "a private company that provides testing services to government agencies").  Although Petitioner alleges that his DNA profile was retained in a "private database" (Motion at 5), the First Circuit noted that it was not kept in a database, but rather was "retained only in an old closed case file on an investigation (and not even on him individually)."  *Thomas*, 736 F.3d at 64.

Petitioner also refers to the Combined DNA Index System (CODIS), which is "a centralized database that includes profiles of state and federal offenders, as well as forensic profiles obtained from crime scene evidence," established under the DNA Analysis Backlog Elimination Act of 2000 (DNA Act), Pub. L. No. 106-546, 114 Stat. 2726 (2000) ("codified as amended in scattered sections of 10 U.S.C., 18 U.S.C., 28 U.S.C., and 42 U.S.C.").  *Thomas*, 736 F.3d at 63.  (Motion at 5.)  The First Circuit held that "[b]ecause [Petitioner] was not charged with nor convicted of a qualifying offense in 2005, his DNA sample was neither collected nor retained pursuant to the DNA Act," and because the DNA Act did not apply, his profile "was never entered into CODIS in the first place."  *Id.* at 64.

Petitioner raised his Fourth Amendment claim against law enforcement in this Court on his motion to suppress, and in the First Circuit in his direct appeal. *Thomas*, 736 F.3d at 55-56, 60. The First Circuit specifically addressed the 2005 collection of the DNA sample as well as the retention and subsequent use of the DNA profile in the 2011 investigation. The First Circuit held that although the manner in which the Government obtained the sample violated the Fourth Amendment, the exclusionary rule did not apply to the evidence. *Id.* at 60-65. An issue that the First Circuit has rejected on direct appeal may not be reviewed again through a section 2255 motion. *Singleton v. United States*, 26 F.3d 233, 240 (1994); *Barrett v. United States*, 965 F.2d 1184, 1190 n.11 (1st Cir. 1992). Because the issue was resolved on direct appeal, Petitioner cannot rely upon the issue to attack the judgment collaterally in a section 2255 motion. *See Singleton*, 26 F.3d at 240; *Barrett*, 965 F.2d at 1190 n.11.

Petitioner also claims violations of the Ninth and Tenth Amendments.[5] (Motion at 5.) Because he did not raise the claims in his direct appeal, the claims are procedurally defaulted. *See Berthoff*, 308 F.3d at 127. Furthermore, Petitioner does not provide any facts that would give rise to a claim under either the Ninth or Tenth Amendment. Any related claim of ineffective assistance of counsel for failing to raise these claims on a direct appeal, or as an interlocutory appeal, as alleged in Petitioner's reply, also lacks merit. *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

---

[5] The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

### 2. Claim of judicial conflict of interest and related ineffective assistance claim (Ground Two)

Petitioner asserts that he is being held "as a political prisoner due to partisan politics," and he asserts a related claim of ineffective assistance of counsel based on counsel's failure to raise the issue despite Petitioner's request. (Motion at 6.) Specifically, Petitioner alleges that the fact that the judge was appointed by a Republican president, and Petitioner sent the threatening letters primarily to Republican politicians, created a conflict of interest. (*Id.*) Petitioner also argues that counsel was ineffective because counsel failed to ask the judge to recuse. (Reply at 2.)

Title 28 U.S.C. §§ 455 and 144 govern the disqualification of judges.[6] Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) provides in part that a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party." Section 144 provides that a claim of judicial personal bias or prejudice, when alleged by a party, must be by a "timely and sufficient affidavit," in accordance with that section.[7] Section 144 provides in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and
> sufficient affidavit that the judge before whom the matter is pending has a personal

---

[6] A judge may decide the issue of his or her own disqualification in the first instance: "It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge." *United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976) (per curiam); *Karim-Panahi v. United States Congress, Senate and House of Representatives*, 105 F. App'x, 270, 274-75 (D. C. Cir. 2004) (per curiam) (unpublished) ("The transfer to another judge for decision on a motion for disqualification under section 455 is at the district court judge's option.")

[7] In *Liteky v. United States*, 510 U.S. 540, 544 (1994), the Supreme Court explained that "[s]ince 1792, federal statutes have compelled district judges to recuse themselves when they have an interest in the suit, or have been counsel to a party." A requirement for recusal for bias in general was first enacted in 1911 and is currently codified at both 28 U.S.C. § 144, which addresses recusal in response to a party's affidavit, and at 28 U.S.C. § 455(b)(1), which imposes recusal requirements on all justices, judges, and magistrate judges and "place[s] the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit." 510 U.S. at 548.

bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. §144.[8]

That a judge appointed by a Republican president presides over a criminal case in which the defendant is accused of threatening Republican politicians is insufficient to disqualify a judge, regardless of whether the claim questions the judge's impartiality under section 455(a), or cites bias under section 455(b)(1) or section 144.  *See Karim-Panahi v. United States Congress, Senate and House of Representatives*, 105 F. App'x, 270, 274 (D. C. Cir. 2004) (per curiam) (unpublished) (holding that the district court did not abuse its discretion when it concluded that a claim under section 455(a) and 455(b)(1) was insufficient because it was based solely on the judge's alleged political and religious connections and "her alleged loyalty to those who selected, confirmed, and appointed her"); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) (holding that a claim that a judge is biased "solely because [one of the attorneys in the case] is embroiled in a controversy with the administration that appointed the judge" is insufficient to establish bias).   In *MacDraw*, the Second Circuit noted:

> Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial. At least in the federal system, judges separate themselves from politics when going on the bench, and their life tenure reduces any felt reliance on political patrons.

*Id.*

The First Circuit's more recent discussion in *In re Bulger*, 710 F.3d 42 (1st Cir. 2013) is instructive.   In *Bulger*, the First Circuit granted a writ of mandamus to require reversal of the

---

[8]The statute also contains certain procedural requirements.  This recommended decision addresses only the legal sufficiency of Petitioner's claim of judicial bias; it does not address the issue whether a claim of bias in a section 2255 motion must meet the procedural requirements that apply to affidavits filed under 28 U.S.C. § 144, and it assumes, for the sake of argument, that Petitioner would be able to comply with the procedural requirements.

district court's order denying recusal, pursuant to section 455(a), "because it is clear that a reasonable person would question the capacity for impartiality of any judicial officer with the judge's particular background in the federal prosecutorial apparatus in Boston during the period covered by the accusations."   710 F.3d at 43.[9]  The First Circuit, however, noted that an unsupported claim of impartiality would be insufficient:

> Still, the defendant's claim and its implications cannot themselves alone suffice to require the judge's recusal, lest the law confer a veto power on the assignment of his trial judge to any heckling defendant who merely levels a charge that implicates a judge's defensive or vicariously defensive reaction.  The recusal standard must be more demanding because "the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."

*Id.* at 46-47 (quoting *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)).

The First Circuit's reasoning in *Bulger* is sound and demonstrates the lack of any merit in Petitioner's argument in this case.  Petitioner's argument is based solely on Petitioner's allegation that the judge was appointed by a president of the same political party as the politicians who were Petitioner's victims.  Petitioner's argument exemplifies the manipulation that the First Circuit denounced in *Bulger*.

Other courts have viewed comparable requests for recusal similarly.  For instance, in *Karim-Panahi*, the D.C. Circuit concluded:  "Where, as here, the movant presents nothing but bald allegations of bias or prejudice, and the record does not reflect even the appearance of bias or prejudice, a district court's denial of a motion for disqualification is appropriate, and certainly not

---

[9] In *Bulger*, the First Circuit noted that earlier in the district court judge's career, and during the period covered by Bulger's indictment, the judge had held various managerial and supervisory appointments within the United States Attorney's Office in the District of Massachusetts.  *Id.* at 44.  In his petition, Bulger alleged that during the period covered by the indictment, he was covered by the Government's promise of immunity in return for his agreement to supply information to the Government about the criminal activities of others.  710 F.3d at 46.

an abuse of discretion." 105 F. App'x at 275.  Likewise, in *Sataki v. Broad. Bd. of Governors*, 733

F. Supp. 2d 54 (D. D.C. 2010), the plaintiff attempted to disqualify the district court judge

> based on allegations that certain of the Court's rulings, combined with the fact that
> the undersigned was appointed by former President William J. Clinton and is
> allegedly affiliated with the Democratic party, are evidence that the Court has an
> extrajudicial bias or prejudice against her counsel of record . . . which has in turn
> prejudiced the Court against her as his client.

733 F. Supp. 2d at 55.  In *Sataki*, the district court noted that, on a prior motion, which the court

had construed as a request for recusal under section 455, the court concluded that recusal was not

warranted or required.  *Id.* at 57.  In response to the plaintiff's subsequent motion, filed under 28

U.S.C. §144, the court also found that the alleged facts did not warrant recusal.  733 F. Supp. 2d

at 67-68.

In short, Petitioner's arguments in support of recusal under 28 U.S.C. § 455 or 28 U.S.C.

§ 144, are baseless.  Because the underlying claim is without merit, the related claim of ineffective

assistance of counsel for the failure to request recusal also fails.  *See Tse*, 290 F.3d at 465.

### 3. Claim of conflict of interest of a postal inspector and related ineffective assistance claim (Ground Three)

Petitioner claims that because one of the postal inspectors who participated in the 2004-

2005 investigation was married to the school secretary who in 2004 received and reported

Petitioner's threatening letter and white powder, the postal inspector had a conflict of interest.

(Motion at 7-8.)  He also asserts a claim of ineffective assistance of counsel based on counsel's

failure to raise the claim.  (*Id.* at 8.)  Petitioner further alleges that although the 2004-2005

investigation exonerated him of wrongdoing because the DNA evidence excluded him as a

possible perpetrator, the Government failed to provide him with this exculpatory evidence.  (*Id.*)

Petitioner thus claims prosecutorial misconduct.

Petitioner's conflict of interest and prosecutorial misconduct arguments are procedurally defaulted because Petitioner failed to raise them in his direct appeal, and the arguments are meritless. Although a defendant has a right to a disinterested prosecutor in a criminal case, *Young v. United States*, 481 U.S. 787, 807 (1987), the investigator was not a prosecutor, and in any event, Petitioner was not prosecuted for the crime investigated in 2004-2005.[10] Simply stated, the marital relationship between the school secretary and the postal inspector does not give rise to any claim by Petitioner based on an alleged conflict of interest. Because the underlying claim is without merit, the related claim of ineffective assistance of counsel also fails. *See Tse*, 290 F.3d at 465. Furthermore, even if the results of the 2004-2005 investigation can be construed to exonerate Petitioner, insofar as the investigation involved alleged conduct that was separate from the conduct that resulted in the charges on which Petitioner was convicted, the results of the investigation cannot be considered exculpatory evidence on the 2011 charges. Petitioner's prosecutorial misconduct claim thus fails.

### 4. Fourth, Ninth and Tenth Amendment claims against Petitioner's former school and related ineffective assistance claim (Ground Four)

Petitioner contends that the preparatory school to which he sent the threatening letter violated his Fourth, Ninth, and Tenth Amendment rights by retaining his name and address in a school database without his knowledge or consent. (Motion at 9.) He also asserts a related claim that appellate counsel was ineffective because counsel failed to raise the issue. (*Id.*)

The Fourth Amendment claim is procedurally barred because Petitioner did not raise it in his direct appeal. The argument also lacks merit because, as the Government asserts and Petitioner

---

[10] As the First Circuit noted in its decision on Petitioner's direct appeal, Petitioner "confessed to having sent the threatening letters" to the school, and "[t]he disconnect between this confession and the findings of the 2005 DNA analysis could have been produced by [Petitioner] simply having another person lick the stamps on those envelopes." *Thomas*, 736 F.3d at 58-59. Petitioner was not exonerated of the earlier crime.

does not contest, the preparatory school is a private entity rather than a governmental or quasi-governmental entity. (Response at 23.) The First Circuit has held that the Fourth Amendment does not apply to searches and seizures by private entities:

> The Supreme Court has consistently construed the Fourth Amendment protection as limiting only governmental action. The Fourth Amendment does not apply "to a search or seizure, even an unreasonable one, effected by a private individual *not* acting as an *agent of the Government or with the participation or knowledge of any governmental official.*"

*United States v. Cameron*, 699 F.3d 621, 637 (1st Cir. 2012) (quotation marks and citation omitted) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (emphasis added)). Petitioner's Fourth Amendment claim against the school fails because the school is a private entity. Because the underlying claim is without merit, the related claim of ineffective assistance of counsel for failure to raise the issue also fails. *See Tse*, 290 F.3d at 465.

Petitioner also claims violations of the Ninth and Tenth Amendments. (Motion at 9.) As with the Ninth and Tenth Amendment claims discussed above, the claims are procedurally defaulted and unsupported by the record. In addition, any corresponding claim of ineffective assistance of counsel fails. *See Tse*, 290 F.3d at 465.

### 5. Claim of ineffective assistance of counsel regarding the plea agreement and the length of the sentence (Ground Five)

Petitioner alleges that counsel misled him regarding the conditional plea agreement. (Addendum to Motion, ECF No. 134-1.) Specifically, Petitioner alleges: "Even though [counsel] knew that the guideline range for my alleged offenses was 57-71 months, he falsely led me to believe that neither the judge nor the prosecution would seek more than 37 months incarceration." (*Id.*)

The record does not support Petitioner's claim. The plea agreement, which Petitioner signed, provides that Petitioner understood that the guidelines calculations provided in the plea

agreement were not binding on the Court.[11]   (Plea Agreement, ECF No. 99 at 4.)   The plea agreement also provides that Petitioner waived "the right to appeal a sentence of imprisonment that does not exceed 37 months," but the parties also agreed that "[t]he number of months mentioned in this paragraph does not necessarily constitute an estimate of the sentence that the parties expect will be imposed." (*Id.*) Petitioner acknowledges in his section 2255 motion that he understood that the plea agreement was nonbinding.  (Addendum to Motion, ECF No. 134-1.) Petitioner signed the plea agreement below the statement: "I have read this Agreement and have carefully reviewed every part of it.  I understand it and I have voluntarily agreed to it." (*Id.* at 6.)

At the plea hearing, the Court asked Petitioner whether counsel had explained the elements and nature of the crimes charged and the penalties that could be imposed, and Petitioner answered that he did.  (Plea Tr., ECF No. 140 at 5.)  After the Court then explained the charges, and that the maximum term of imprisonment on Counts 1, 3, 7, and 8, was ten years, and five years on Count 5, Petitioner told the Court that he understood the charges and the penalties.  (*Id.* at 6-8.)   In response to the Court's inquiry, Petitioner represented that no one had threatened him or tried to force him to plead guilty.  (*Id.* at 12.)  Counsel confirmed for the Court that the written plea agreement that Petitioner signed was the only prior formal plea offer presented to Petitioner.  (*Id.*) The Court then explained to Petitioner:

> I'll listen carefully to the recommendations from the Government, from your lawyer, from you if you choose to speak to me, but if I don't accept the recommendations or if the sentence turns out to be more severe than you hoped for, you'll have no right to withdraw your guilty plea; do you understand?

(*Id.* at 14.)  Petitioner answered: "Yes, Your Honor." (*Id.*)

---

[11] The plea agreement provided that the parties agreed to recommended base offense levels for all counts to which Petitioner agreed to plead guilty, including a base offense level of 18 for Count 8.  (Plea Agreement, ECF No. 99 at 3.)

The Court also informed Petitioner that the Court could not determine a guidelines sentence until the probation office prepared the presentence investigation report, and the Court further advised that there "may be circumstances where I do not follow the guideline, but instead impose a sentence that's more severe or less severe than what the guideline calls for; do you understand?" (*Id.* at 15, 16.)  Petitioner replied: "Yes, Your Honor."  (*Id.*)

The Court asked: "Aside from this written plea agreement that we've talked about, has anybody made any other promise to get you to plead guilty?"  (*Id.*)  Petitioner replied: "No, Your Honor."  (*Id.*)  The Court asked: "Has anyone made any promise to you as to what kind of sentence I will impose?"  (*Id.*)  Petitioner replied: "No, Your Honor."  (*Id.*)

At the conclusion of the discussion, the Court found, in part based on Petitioner's statements in the plea colloquy, that Petitioner was aware of the maximum possible punishment and that Petitioner pled guilty knowingly and voluntarily.  (*Id.* at 17-18.)

Particularly given the thoroughness and directness of the Court's discussion with Petitioner, Petitioner has provided "no valid reasons why he should be relieved of his statements" in the plea agreement or at the plea hearing.  *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984).

> [T]he presumption of truthfulness of the [Fed. R. Crim. P. 11] statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified.

*Id.*  The Court's colloquy was more than sufficient to correct any misunderstanding that Petitioner could possibly have had as a result of counsel's advice about the length of the sentence.  Even if some uncertainty or misunderstanding persisted, "[a]n attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test."  *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997); *see also United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir.

1990) (holding that an inaccurate sentencing prediction by counsel, standing alone, does not satisfy either prong of the *Strickland* analysis).[12]   Petitioner, therefore, cannot prevail on his ineffective assistance claim.

### 6. Claim of ineffective assistance of counsel for failure to advise Petitioner that he had a right to plead nolo contendere (Ground Six)

Petitioner argues that counsel failed to advise him that he had a right to plead nolo contendere.  (Addendum to Motion, ECF No. 134-1.)

Contrary to the premise of Petitioner's argument, Petitioner does not have the right to plead nolo contendere.  Fed. R. Crim. P. 11(a) states in pertinent part:

> **(1)    In General.**  A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere.
>
> **(2)    Conditional Plea.**  With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea.
>
> **(3)    Nolo Contendere Plea.**  Before accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice.

*See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of sound judicial discretion."); *United States v. Skerret-Ortega*, 529 F.3d 33, 37 (1st Cir. 2008) (noting that a defendant "does not have an absolute right to plead guilty," and it is "within the district court's discretion" to reject a plea).  A defendant thus does not have the right to plead nolo, or to have a nolo contendere plea accepted.  Because Petitioner does not have a legal right to plead nolo contendere, Petitioner's contention that his counsel was ineffective because he failed to advise him of such a right necessarily fails.

---

[12] The fact that misrepresentations may be assumed for purposes of this discussion shall not be construed to suggest that the record supports the conclusion that counsel provided inaccurate information.

**7. Claim of ineffective assistance of counsel for failure to appeal the denial of Petitioner's motion to dismiss Counts 1-6 of the superseding indictment (Unnumbered Ground)**

Petitioner maintains that counsel was ineffective because he failed to appeal from the Court's denial of his motion to dismiss Counts 1-6 of the superseding indictment.[13]  (Motion at 4.) Count 1 and Count 3 alleged that Petitioner sent threatening letters to members of Congress in violation of 18 U.S.C. § 115(a)(1)(B); Count 5 alleged that Petitioner mailed a threatening communication, in violation of 18 U.S.C. § 876(c).[14]  (Superseding Indictment at 1-4.)  In his section 2255 motion, Petitioner also argues that counsel was ineffective because counsel included Count 5 in the motion to dismiss.  (Motion at 4.)

Petitioner had argued in the motion to dismiss that Counts 1-6 should be dismissed because they did not allege true threats.  (Motion, ECF No. 86 at 1.)  At the hearing on both of Petitioner's motions to dismiss, the Court, citing *Watts v. United States*, 394 U.S. 705 (1969), and *United States v. Stefanik*, 674 F.3d 71 (1st Cir. 2012), denied the motion to dismiss Counts 1-6, concluding that each of the communications alleged in Counts 1, 3, and 5 expressed true threats.[15]  (Hearing Tr.,

---

[13] Of the counts that were the subject of the motion, counts 2, 4, and 6 (along with Count 9) were dismissed at sentencing on the Government's motion and, therefore, are not at issue.  (Judgment at 1.)

[14] Title 18 U.S.C. § 115(a)(1)(B), violations of which were alleged in Counts 1 and 3, states in pertinent part:

> Whoever . . . threatens to assault, kidnap, or murder, a United States official . . with intent to impede, intimidate, or interfere with such official . . . while engaged in the performance of official duties, or with intent to retaliate against such official . . . on account of the performance of official duties, shall be punished as provided in subsection (b).

A "United States official" includes a Member of Congress.  18 U.S.C. § 115(c)(4).

Title 18 U.S.C. § 876(c), a violation of which was alleged in Count 5, states in pertinent part:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

[15] In *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court held that a statute that prohibited knowing and willful threats against the President of the United States, was "constitutional on its face," but must be interpreted to

ECF No. 129 at 54-55.)  Although Petitioner contends that counsel should not have included in the motion to dismiss a request to dismiss Count 5, Petitioner does not explain why counsel's performance was deficient for the inclusion of Count 5 in the motion.  In fact, because the statute that is the subject of Count 5, 18 U.S.C. § 876(c), requires a communication that contains a threat in order to constitute a violation, counsel's inclusion of Count 5 in the motion to dismiss is understandable.

Because a factfinder plainly could have found that Petitioner's statements constituted true threats, appellate counsel's performance was not deficient for failing to raise the issue in Petitioner's direct appeal.  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  In this case, Petitioner has not presented fact or argument that would overcome the strong presumption that counsel made a sound choice in omitting a meritless appellate argument.  *See Strickland*, 466 U.S. at 688-89; *Bucci*, 662 F.3d at 30.

---

require the Government to prove a "true 'threat.'"  *Id.* at 707-08 (discussing the statute).  In *United States v. Stefanik*, 674 F.3d 71, 75 (1st Cir. 2012), the First Circuit concluded that "[a] person may be convicted for making a threat if he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made."  *Id.* at 75 (quotation marks omitted).  (Hearing Tr., ECF No. 129 at 54-55.)

At the hearing, the Court read excerpts from each of the letters that was the subject of Counts 1, 3, and 5, finding that each contained a true threat.  (Hearing Tr. at 54-55.)  The Court noted that Petitioner stated in his letter to the senator: "[T]he time is at hand; soon you will pay; blessed is he who spills your blood; blessed is he who spills the blood of your family; just know [that] we are everywhere [and] your days are numbered."  (*Id.* at 54; Prosecution Version, ECF No. 101 at 1.)  In a similar vein, Petitioner's letter to the representative stated: "[Y]our time is coming, [epithet]; blessed is he who spills your blood; blessed is he who spills your family['s] blood; blessed is the day of vengeance; you will be struck down by a trusted hand; we will smile until the time [to strike]."  (Hearing Tr. at 54; Prosecution Version at 2.)  Petitioner's letter to the governor stated: "[N]ow I'm ready to vote with a bullet; I've got you in my [cross-hairs]; I will put a bullet or two in you[,] if it's the last thing I do; I'm willing to sacrifice my life just to make sure you die, [epithet]; I will strike when you least expect it."  (Hearing Tr. at 54-55; Prosecution Version at 3.)

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.   In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of September, 2015.